UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ANDREW BOLKHOVSKOY, | : | CIVIL ACTION NO. |
| Plaintiff, | : | |
| v. | : | **JURY TRIAL DEMANDED** |
| SENTAGE CORPORATION D/B/A DENTAL SERVICES GROUP | : | |
| | : | SEPTEMBER 8, 2020 |
| Defendant. | : | |

# COMPLAINT

## JURISDICTION AND VENUE

1. This action arises under the Americans with Disabilities Act Amendments Act (ADAAA), 42 U.S.C. § 12101 et seq; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2; Conn. Gen. Stat. §31-290a; and Connecticut State Law.

2. The jurisdiction of this court is founded upon 28 U.S.C. §1331 (federal question) and the provisions of 28 U.S.C. §1343.

3. Venue is proper in the District of Connecticut pursuant to 28 U.S.C. §1391(b) in that the claims arose in this district and Plaintiff resides in this district.

4. Supplemental jurisdiction over Plaintiff's supplemental state law claims are invoked pursuant to 28 U.S.C. §1367 as the claims arise out of the same transaction and occurrences as Plaintiff's federal claims.

5. Costs, expert witness fees and attorney's fees are sought pursuant to 42 U.S.C. §1988.

6. Plaintiff received a Notice of Right to Sue from the Equal Employment Opportunity Commission (EEOC) on June 10, 2020.

## PLAINTIFF

7. The Plaintiff, Andrew Bolkhovskoy ("Bolkhovskoy" or "Plaintiff") is a natural person and resident of the State of Connecticut.

## DEFENDANT

8. The Defendant, Sentage Corporation d/b/a Dental Services Group ("Defendant" or "DSG"), is a foreign corporation organized under the laws of Delaware, is registered to conduct business within the State of Connecticut, and conducts substantial business in the State of Connecticut, doing business as DSG, at 36 Mill St #3811, Wethersfield, Connecticut, where Plaintiff was employed.

## FACTUAL ALLEGATIONS

9. Plaintiff was hired in June 2013 and had an outstanding and advancing career as a vastly experienced Dental Technician with DSG for over six years.

10. The Plaintiff is of Russian national origin and ancestry.

11. Throughout his employment, Plaintiff was a dedicated employee who continually showed loyalty, hard work, honesty, and various other attributes that made him a valuable employee.

12. Plaintiff always performed the duties of his position in a satisfactory manner and did not have any work performance issues or negative write-ups.

13. Plaintiff had vast experience and educational background as a Dental Technician, including working the areas of crown and bridges, dentures, cast partials, porcelain work, and orthodontia.

14. Plaintiff also had the technical skills to wax, cast appliances, and solder appliances.

**A. Plaintiff Suffers His First Workplace Injury and Requires Surgery**

15. Then, unfortunately, in April of 2018, to Plaintiff's severe detriment, he was diagnosed with and suffered from carpal tunnel syndrome (CTS), due to the repetitive motions required by his job, which is a condition that causes pain, numbness, and tingling in the hand and arm.

16. The condition occurs when one of the major nerves to the hand — the median nerve — is squeezed or compressed as it travels through the wrist.

17. Plaintiff's CTS affected his right wrist and fingers in his right hand.

18. As a result of his CTS, Plaintiff required surgery in August of 2018.

19. Ergo, Plaintiff was required to use his short-term disability ("STD") and file a workplace injury claim with the State of Connecticut Worker's Compensation Commission.

20. Plaintiff remained out of work on STD leave from August 22, 2018, through September 23, 2018.

21. Plaintiff returned to work on September 23, 2018. Regrettably, the pain in his right hand also returned within a few months after he came back to work from his first surgery.

**B. Plaintiff Requires a <u>Second</u> Surgery Due to His Carpal Tunnel Syndrome**

22. In or about January of 2019 the pain became unbearable and in May of 2019, Plaintiff suffered another workplace injury, due to the repetitive motion of his position, requiring a second surgery to his right hand.

23. Again, Plaintiff was forced to file a claim with the State of Connecticut Worker's Compensation Commission, and was out of work on STD leave from June 6, 2019, and was able to return to work in July of 2019.

### C. While out on a Medical Leave Plaintiff is Replaced

24. While Plaintiff was out of work this second time due to his disability-related symptoms, DSG interviewed for and hired a new full-time Dental Technician, with a motive to replace the Plaintiff, which is exactly what occurred.

25. Of significant importance, Defendant's practice always had three Dental Technicians. Now, for the first time, it had employed four Dental Technicians.

26. Further tellingly on this point, while Plaintiff was out of work on his second medically necessary LOA, he was informed that Charlie Meneguzzo (non-Russian; no known disability), the Owner, did not like him "because he had too many surgeries," a brazen disability discriminatory comment.

27. DSG's last salvo occurred on September 3, 2019 — Plaintiff was laid off of work while the new Dental Technician, Carlos (non-Russian; no known disability), was permitted to continue to work his full-time schedule.

28. DSG, instead of accommodating Plaintiff or offering him job-protected leave, it terminated him ostensibly because of his disability/perceived disability.

29. Plaintiff could have (and should have) been offered an accommodation but he was not — instead Defendant chose to terminate his employment with the practice after six years of dedicated service.

30. Defendant's post-hoc explanation, selecting Plaintiff for a reduction in force (RIF) as the reason for Plaintiff's termination has multiple inconsistencies calling into question the veracity of it.

   a. Upon information and belief, Defendant has hired three new employees since Plaintiff was laid off, undercutting their stated reason for Plaintiff's termination according to which there was not enough workload to keep him employed.

   b. The RIF was implemented <u>after</u> Bolkhovskoy was terminated. In <u>October 2019</u>, DSG recognized that they would need to implement a RIF. Plaintiff was furloughed and terminated in <u>September 2019, a month earlier</u>

   c. Respondent hired other Dental Technicians during the same time-frame as the RIF.

   d. Bolkhovskoy had the skillset and was qualified to continue working as a Dental Technician and his job functions have not been eliminated, its just being performed by someone else.

## COUNT ONE

### DISABILITY DISCRIMINATION, IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT AMENDMENTS ACT

31. Plaintiff hereby incorporates Paragraphs 1-30, with the same force and impact as if fully set forth herein.

32. Plaintiff suffers from carpal tunnel syndrome (CTS).

33. This condition causes pain, numbness, and tingling in the hand and arm.

34. The condition occurs when one of the major nerves to the hand — the median nerve — is squeezed or compressed as it travels through the wrist.

35. Plaintiff's CTS affected his right wrist and fingers in his right hand.

36. Despite being fully informed about Plaintiff's ADAAA disability, Defendant failed to engage in the mandatory "interactive process" to determine how to accommodate his known disability.

37. Instead, Plaintiff was outwardly discriminated against, treated disparately, and ultimately wrongfully terminated solely because of the characteristics associated with his disability.

38. Defendant treated Plaintiff in a disparate manner in the terms and conditions of his employment based upon his disability, including, but not limited to the following:

    a) Furloughing the Plaintiff on September 3, 2019, leaving him with no income to pay for his necessary medical expenses;

    b) Claiming that the Plaintiff was included in a RIF, which occurred a month after his termination;

    c) Terminating the Plaintiff on September 30, 2019, fully aware of his physical disability;

    d) Failing to engage in the ADAAA mandated "interactive process"; and

    e) Failing to Accommodate Plaintiff's known disability.

39. As a result of his wrongful discharge, Plaintiff has suffered and will continue to suffer damages including but not limited to lost wages, fringe benefits, health insurance,

emotional and psychological distress, stress, anxiety, and loss of the ability to enjoy life's pleasures and activities.

40. Plaintiff seeks compensatory and punitive damages for Defendant's misconduct.

## COUNT TWO

### PERCEIVED DISABILITY DISCRIMINATION, IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT AMENDMENTS ACT

41. Plaintiff hereby incorporates Paragraphs 1-40, with the same force and impact as if fully set forth herein.

42. Plaintiff suffers from carpal tunnel syndrome (CTS).

43. This condition causes pain, numbness, and tingling in the hand and arm.

44. The condition occurs when one of the major nerves to the hand — the median nerve — is squeezed or compressed as it travels through the wrist.

45. Plaintiff's CTS affected his right wrist and fingers in his right hand.

46. Having had two surgeries to his right hand within one year, Defendant perceived that Plaintiff would not adequately be able to continue performing the functions of his position, based upon his prior disability related issues.

47. Defendant treated Plaintiff in a disparate manner in the terms and conditions of his employment based upon his perceived disability, including, but not limited to the following:

   a) Furloughing the Plaintiff on September 3, 2019, leaving him with no income to pay for his necessary medical expenses;

    b) Claiming that Plaintiff was included in a RIF, which occurred a month after his termination;

    c) Terminating the Plaintiff on September 30, 2019, fully aware of his perceived disability;

    d) Failing to engage in the ADAAA mandated "interactive process"; and

    e) Failing to Accommodate Plaintiff's known disability.

48. As a result of his wrongful discharge, Plaintiff has suffered and will continue to suffer damages including but not limited to lost wages, fringe benefits, health insurance, emotional and psychological distress, stress, anxiety, and loss of the ability to enjoy life's pleasures and activities.

49. Plaintiff seeks compensatory and punitive damages for Defendant's misconduct.

## COUNT THREE

### WORKERS COMPENSATION RETALIATION, IN VIOLATION OF CONN. GEN. STAT. 31-290A

50. Plaintiff hereby incorporates paragraphs 1-49 with the same force and impact as if fully set forth herein.

51. Plaintiff was diagnosed with carpal tunnel syndrome (CTS), and as a result of its prominent bad evolution, his hand required surgery in August of 2018.

52. Plaintiff was required to use his short-term disability ("STD") and file a claim with the State of Connecticut Worker's Compensation Commission.

53. Plaintiff was out of work on worker's compensation leave from August 22, 2018, to September 23, 2018.

54. Regretfully, in June of 2019, Plaintiff re-injured his right hand which required him to undergo a second surgery; once again he filed a claim with the State of Connecticut Worker's Compensation Commission and was forced to be out of work on workers compensation leave again until from June 6, 2019, to July 7, 2019.

55. In short proximity thereafter, less than two months later, on September 3, as direct retaliation for his previous engagement of protected activity for filing multiple workers compensation claims, Plaintiff was furloughed and subsequently terminated under the guise of financial business' needs.

56. However, the timing of the implementation of the RIF and furlough is incongruent. In October 2019, DSG recognized that they would need to implement a RIF. Plaintiff was furloughed and terminated in late September 2019, one month _prior_ to the implementation of the October RIF.

57. Defendant's termination of Plaintiff was motivated by its retaliation against him for exercising his protected rights under Connecticut's worker's compensation statute.

58. As a result of the foregoing conduct, Plaintiff has suffered and will continue to suffer damages, including but not limited to lost wages, fringe benefits, health insurance, emotional and psychological distress, stress, anxiety, and loss of the ability to enjoy life's pleasures and activities.

59. Plaintiff is seeking damages as a result of Defendant's willful and wanton misconduct.

## COUNT FOUR

### NATIONAL ORIGIN AND ANCESTRY DISCRIMINATION, VIOLATION TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

60. Plaintiff hereby incorporates paragraphs 1-59 with the same force and impact as if fully set forth herein.

61. Plaintiff is of Russian national origin and ancestry.

62. Plaintiff was the only Russian Dental Technician on his team.

63. The Defendant treated the Plaintiff disparately and subjected him to adverse employment action, due to being Russian, including, but not limited to:

    (a) Furloughing the Plaintiff on September 3, 2019;

    (b) Terminating Plaintiff's employment on September 30, 2019.

64. Defendant's conduct is unlawful and in violation of Title VII.

65. As a result of the Defendant's unlawful conduct, Plaintiff has suffered, and will continue to suffer damages, including but not limited, to substantial lost wages, fringe benefits, health insurance, retirement and pension benefits, mental and emotional distress and the ability to enjoy life's pleasures.

66. Plaintiff seeks damages as a result of Defendant's unlawful conduct.

**PRAYER FOR RELIEF**

Wherefore the Plaintiff prays that this court award:

1. Money damages;

2. Costs;

3. Punitive damages, attorney fees, and expert witness fees;

4. Pre-judgment interest

5. Trial by jury; and

6. Such other relief as the Court deems just, fair, and equitable.

THE PLAINTIFF,
ANDREW BOLKHOVSKOY

By: _____/s/_____
Michael C. McMinn (#423555)
**THE MCMINN EMPLOYMENT LAW FIRM, LLC**
1000 Lafayette Blvd., Suite 1100
Bridgeport, CT 06604
Tel: (203) 683-6007
Fax: (203) 680-9881
michael@mcminnemploymentlaw.com

*COUNSEL FOR PLAINTIFF*